### HILL et al. v. BOLAND et al.*

(Court of Appeals of District of Columbia. Submitted November 4, 1925. Decided December 7, 1925. Rehearing Denied January 2, 1926.)

#### No. 4244.

Beneficial associations ⟨⟩22—Manner of distribution of property of dissolved local lodge determined.

Where large majority of local lodge voted to withdraw from order from which it had charter, but which had no authority to establish branches, and affiliate with another, but minority accepted a return of surrendered charter and reorganized under new name, *held*, that local lodge was dissolved and two new associations organized, and property of dissolved lodge should be distributed per capita to two new lodges.

Appeal from Supreme Court of District of Columbia.

Action by Mary C. Boland and others against Elizabeth C. Hill and others. Decree for plaintiffs, and defendants appeal. Reversed and remanded.

L. P. Harlow, of Washington, D. C., for appellants.

J. D. Sullivan and D. W. O'Donoghue, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

*Certiorari denied 46 S. Ct. 355, 70 L. Ed. ——.

VAN ORSDEL, Associate Justice. In October, 1913, 47 ladies in the city of Washington organized a voluntary unincorporated society under the name of "Court, District of Columbia No. 212, National Order of the Daughters of Isabella." They were given a charter by the National Order of the Daughters of Isabella, having its headquarters in Utica, N. Y. They continued to operate under their charter from 1913 to 1921. They were one of many like subordinate societies affiliated with the National Order, which was incorporated under the laws of the state of New York.

It appears that the National Order was a membership corporation organized June 24, 1903, as "Daughters of Isabella." The articles of incorporation contained no provision for the establishment of courts or branches; the name was later changed to the "National Order of the Daughters of Isabella." It was organized for social and literary purposes, and for rendering aid to its members, whenever desirable and proper. Some time after its incorporation, and when it proceeded to establish branch courts in the state of Connecticut, a suit was brought in that state by the National Circle of the Daughters of Isabella, a Connecticut corporation, organized for the same identical purposes as the New York corporation, but with corporate authority to establish branches throughout the country and in foreign countries and govern the same. The suit resulted in an injunction restraining the New York corporation from establishing any further branches in Connecticut under the name "Daughters of Isabella." The existing subordinate branches of the New York corporation in Connecticut were restrained from using that name. An appeal was taken to the Supreme Court of Errors of Connecticut, and the decree was affirmed December 16, 1910. Daughters of Isabella, No. 1, et al. v. National Order of the Daughters of Isabella et al., 83 Conn. 679, 78 A. 333, Ann. Cas. 1912A, 822.

Subsequently, in a suit between the same parties in the United States District Court for the Northern District of New York, an injunction was sought to restrain the National Order of the Daughters of Isabella, the New York corporation, from establishing any further branches in any part of the United States under the name Daughters of Isabella. The injunction was denied, and on appeal the decree was reversed, and injunction issued as prayed for, by the Circuit Court of Appeals of the Second Circuit, December 15, 1920. National Circle, Daughters of Isabella, v.

National Order of Daughters of Isabella (C. C. A.) 270 F. 723, certiorari denied, 255 U. S. 571, 41 S. Ct. 376, 65 L. Ed. 791.

In its opinion the Circuit Court of Appeals found that the New York corporation was organized in fraud of the Connecticut association, in that "as early as the year 1899 the National Secretary of the Knights of Columbus was receiving from time to time inquiries from various sections of the country regarding the Daughters of Isabella, and that such inquiries were referred by him to the officers of the voluntary association at New Haven already referred to. Prior to the organization of the defendant, one Michael F. Kelly, of Utica, N. Y., was at New Haven, and there discussed with the National Secretary of the Knights of Columbus the voluntary association of the Catholic women that then existed, and obtained from him the name of its presiding officer, and from her he obtained copies of the ritual and installation exercises then being used by such voluntary association. Later Kelly was instrumental in organizing the Catholic women of Utica into the defendant organization under the name the 'Daughters of Isabella,' which was incorporated on June 24, 1903, under the laws of the state of New York. He furnished to the New York corporation the basic idea of that organization, which, on its petition to the Supreme Court of the state of New York had its name changed, on and after September 15, 1905, so that it should be thereafter known as the 'National Order of the Daughters of Isabella.' This corporation is not, under its articles of incorporation, expressly empowered to organize or institute subordinate lodges or courts or branches, but it has nevertheless done so in various states."

Following the issuance of the injunction by the federal court, the New York corporation, by an act of the Legislature of the state of New York, changed its name to "Catholic Daughters of America." Notice of the change of the name was sent to the various branches, with instructions to put the new name into effect at once. At a meeting of the District of Columbia Court No. 212, Daughters of Isabella, on June 1, 1921, the matter of adoption of the new name was discussed, but no official action was taken. A circular letter was sent out among the members, calling a meeting in September, 1921, to consider the question of severing the present connection of the court with the National Order of the Daughters of Isabella, and surrendering its charter, and also to vote upon the question of affiliating with the National Circle, Daughters of Isabella, the Connecticut cor-

poration. At meetings held on September 7 and 11, 1921, the national officers of the Catholic Daughters of America were present and heard in opposition to the proposed action. On October 5, 1921, at a regular meeting of Court No. 212, the resolution calling for the change was adopted by a vote of 303 for to 20 against. On October 9, 1921, appellants, defendants below, and other withdrawing members, accepted a charter from the National Circle, Daughters of Isabella, and became a branch of the Connecticut association, under the name, "District of Columbia Circle 178, Daughters of Isabella." The suit here involves the property, real and personal, owned by Court No. 212 at the time of the action taken in October, 1921, and taken over and held by this organization.

In 1918 the Daughters of Isabella, Court No. 212, desiring to establish a club, caused to be incorporated under the laws of the District of Columbia, a corporation known as the "Isabella Club." Suitable property was purchased and paid for out of the money contributed to and belonging to the members of the Daughters of Isabella, Court No. 212. The court had complete control of the corporation, which was organized merely for the purpose of taking title to the real estate and holding it as trustee for the court. During the present litigation the club property was sold, and the net proceeds, $11,507.97, is held to abide the result of this suit. From a decree for plaintiffs, awarding an accounting against defendant, to ascertain the amount of money and property so taken over, and a delivery of the books, records, money, and property in their possession, and the further accounting as to the real estate so taken over, this appeal was taken.

It is clear that the New York corporation had no such control over the branch association in the District of Columbia as to enable it to enforce a change of name, or indeed impose upon it any other regulation. Its charter to the local association amounted to nothing, since at the time of its issuance the New York corporation was not vested with corporate authority to establish branches. It was moving under a fraudulent name, in open defiance of a decree of the highest court of Connecticut; hence its inducement of the organization of the local association was deceptive, to say the least. If the conditions imposed by the New York society, respecting the change of name, had been accepted by the local society, and afterwards a majority of the local association had gone over to the Connecticut society, we would have a different case; but that is not what was done. A

notice was received from the New York society, directing a change of name. The matter was held in abeyance for several months, during which the situation was discussed, and on the first vote taken relative to the matter an overwhelming majority voted to withdraw from the New York society and affiliate with the Connecticut society. Accordingly, whatever dues were owing from the local association to the New York society were promptly paid and the charter surrendered. The mere fact that the charter was returned to the minority of the local association, and they decided, about two months after the majority had voted to affiliate with the Connecticut orgaization, to elect officers, change the name from the "Daughters of Isabella," as it appeared in the charter, to "Catholic Daughters of America," and proceed under that name, did not amount to a continuance of the former association, but amounted in law to the organization of a new association under a different name.

We have no controversy with the numerous authorities, cited by counsel for plaintiffs in their brief, to the effect that a majority of a voluntary association, like the Daughters of Isabella, cannot abandon the organization, form a new organization, or attach themselves to another organization, and take with them all its property. The rights of the minority equity will protect. On the other hand, where by a vote of the association the organization is dissolved, as was the case here, and a majority affiliates with another organization, and the minority reorganizes in compliance with the new requirements of the old organization with which the association was connected, the minority cannot take all of the property of the disbanded organization. What occurred in this case was the equivalent of a dissolution of the association of the Daughters of Isabella, Court No. 212, by the vote of a very large majority of the association. The right of the majority to reorganize under a charter from the Connecticut society, and the right of the minority to reorganize in compliance with the changed conditions of the New York society, must be conceded.

The sole question left for our consideration is the disposition of the property. We have not lost sight of the fact that the property of Court No. 212, Daughters of Isabella, was held in trust for certain specific purposes, namely, for the promotion of the social and intellectual standing of its members, for literary purposes, and for the purpose of rendering aid and assistance to its members. If the new associations, or either of them, were organized for a different purpose, a question might arise as to the right to divert the property from the purpose for which it was accumulated. Since, however, both of the new associations are organized for exactly the same purposes as was the original association, it cannot be said that there is a violation of the trust, and a distribution of the property to the new associations will merely operate to carry out the objects of the original trust.

The equitable course to be pursued is plain. A receiver should be appointed by the court below to take charge of the property and distribute it to the two new organizations on a per capita membership ratio as it existed at the time of the dissolution. The real estate, held in trust by the Isabella Club, has been disposed of, and the funds are held intact, awaiting the disposition of this case. The distribution of the entire property of the original association, as above suggested, can be readily made.

The decree is reversed, with costs, and the cause is remanded for further proceedings, not inconsistent with this opinion.